FELLERS v. DAVIS.

In action against the sureties on an administration bond after decree by the Court of Probate against the administrator, testimony of a witness (since deceased) taken in the Court of Probate on the accounting there had cannot be given in evidence against the sureties in this action, they not having been parties to such accounting.

Before FRASER, J., Newberry, February, 1884.

The opinion sufficiently states the case.

*Messrs. Pope & Packer*, for appellants.

*Messrs. Suber & Caldwell, Geo. S. Mower*, contra.

March 28, 1885.    The opinion of the court was delivered by

MR. JUSTICE McGOWAN.    Raiford C. Swindler died intestate in 1871, and letters of administration upon his estate were granted to his son, John R. Swindler, who, together with Smith L. Davis and Micajah D. Suber, as his sureties, executed to the probate judge of Newberry the usual administration bond. Soon after, in August, 1871, Smith L. Davis died leaving a will, of which his widow, Keziah W. Davis, is the qualified executrix. On June 6, 1883, this action was brought in the name of the probate judge on the administration bond against the sureties, Micajah D. Suber and Keziah W. Davis, as executrix of her deceased husband.    The estate of the intestate, R. C. Swindler, proved to be insolvent, and the action was brought at the instance of creditors to recover from the sureties the sum of $886.25, and interest thereon from December 5, 1871, which, as alleged, John R. Swindler, the administrator, had wasted of the estate of his

intestate. Suber is understood to be insolvent and did not answer, but Mrs. Davis, as executrix of the other surety, answered, denying that the administrator had committed any *devastavit*, and, insisting that she had never been made a party to any proceedings for an account against the administrator, who was not a party to this cause, denied all liability to account in the premises.

The following facts, stated in general terms, were made to appear: On November 3, 1871, Micajah D. Suber, and wife, filed in the Probate Court a petition against John R. Swindler, and the other heirs at law of . Raiford C. Swindler, for partition of his lands. On the same day (November 3), John R. Swindler answered, and in his answer set up that he was administrator, that there were debts unpaid, and had the creditors called in, turning the petition for partition into a proceeding to marshal assets, sell the lands, &c. A few days after this proceeding, viz., on November 13, 1871, the administrator petitioned the probate judge to sell the balance of the personalty (there had been a sale before). The probate judge made the order, but he directed the sale made by the then sheriff, one Thomas M. Paysinger; who made the sale aggregating $886.25, taking four notes payable to himself as sheriff, amounting to $797.65, on which John R. Swindler was either principal or surety, and the remainder he collected in cash. These assets were never turned over, either to the administrator or to the judge of probate, to be administered in that court in the proceeding then pending to marshal the assets. Paysinger soon after absconded. The lands were sold, and the proceeds of sale apportioned among the creditors in the probate proceedings, leaving still a large amount due.

Matters seemed to have stood in this condition for ten years, until 1881, when the proceedings were revived, and an effort made to charge the administrator, John R. Swindler, with the money lost by the Paysinger sale. It does not clearly appear under what proceeding this was done, but supposed to be the proceedings in the Probate Court, in which the said Swindler, although a defendant, had the creditors called in and the proceeds of the land sold distributed among the creditors, who are still not fully paid. But it is quite clear that the sureties on the administration bond were not before the Probate Court in that

proceeding, or any other when the account of the administrator was stated. The probate judge held that the administrator Swindler was not chargeable, in his official capacity, with the loss by the Paysinger sale; but, on appeal, Judge Pressley reversed that ruling, and, as directed, the probate judge then held that Swindler, the administrator, was officially liable for the loss in the Paysinger sale.

Based on this last decree of the probate judge, this action was brought on the administration bond, to make the sureties liable for the Paysinger loss, on the ground that it was occasioned by a breach of the official duty of John R. Swindler as administrator. It seems that no effort was made, under the probate judgment, against the administrator, to make the money out of him, and he is not made a party in this action against the sureties. By consent of parties, the cause was heard by Judge Fraser without a jury. During the trial the plaintiff proposed to read, in evidence, what purported to be taken down in writing, as the testimony of Thomas M. Paysinger, at the accounting of the administrator (J. R. Swindler) in the Probate Court. This was objected to, but the presiding judge allowed the contents of the paper to be read as evidence. He held, among other things, that the decree in the Probate Court, against the administrator, was only *prima facie* evidence in an action against the sureties; but he decided that the evidence before him was sufficient to establish the claim against them. He ruled that the sureties had a right to have the accounts re-adjusted, if they could be benefited thereby, but he thought it would not be to their advantage to re-open the accounts, and pronounced judgment for the plaintiff to the extent of the Paysinger sale and interest, amounting to $1,652.57.

From this judgment the defendant, Keziah W. Davis, as executrix, appeals upon numerous grounds, which may be condensed into the following: I. That it was error to charge the sureties on the administration bond with the loss of the Paysinger sale. II. That it was error to find, as a fact, that the administrator did not take steps to force the sheriff to transfer the notes and money, in view of the uncontradicted testimony that very soon after the sale Paysinger absconded, and that at that time the unsettled condition of the country practically closed the courts. III. That it was

error to hold that the accounting of the administrator before the Probate Court, was binding on the sureties, who were not parties. IV. That it was error to admit the testimony of Thomas M. Paysinger, given before the Probate Court in the proceeding against the administrator for account.

From the view the court takes it will not be necessary to consider any of the grounds, except the last, and as the case has to go back, it will perhaps be better not to discuss them now. In admitting as evidence what Paysinger was taken down as swearing in the proceeding before the probate judge, the ground upon which it was admitted is not stated; but as it was said at the bar that Paysinger is dead, we suppose that must have been the ground. Assuming that it was, and that the fact was regularly proved as a foundation for allowing the evidence, we do not think it was properly admissible. This case, and that before the Probate Court, cannot be regarded as "between the same parties." The sureties were not parties to that proceeding, and the administrator, who must be taken to have been a party there, is not before this court. In stating the different classes of exceptions to the rule rejecting "hearsay" evidence, Mr. Greenleaf says: "May be included the testimony of deceased witnesses, given in a former action between the same parties." 1 *Green. Evid.,* § 163. Lord Mansfield in *Mayor of Doncaster* v. *Day,* 3 *Taunt.,* 262, stated the rule thus: "What a witness, since dead, has sworn upon a trial between the same parties, may be given in evidence, either from the judge's notes, or from notes that have been taken by any other person, who will swear to their accuracy; or the former evidence may be proved by any person who will swear from his memory to its having been given." See *Bishop* v. *Tucker,* 4 *Rich.,* 178; *Drayton ads. Wells,* 1 *Nott & McC.,* 409; *State* v. *Campbell,* 1 *Rich.,* 124; *Yancey* v. *Stone,* 9 *Rich. Eq.,* 429; *Parker* v. *Leggett,* 13 *Rich.,* 171.

But it is urged that, although the parties personally are not the same, the subject matter is the same; that the judgment of the Probate Court against the administrator is *prima facie* evidence against the sureties, and therefore they must be privies. It is true that the liability of the sureties arises under the same bond as that which binds the administrator, and they all might,

and indeed ought to be, sued together (*Taylor* v. *Taylor*, 2 *Rich. Eq.*, 128); but it does not seem to us that they are privies in the sense of the rule which makes evidence against one necessarily evidence against the other. The rule admitting the evidence is exceptional, and proceeds upon the view that the parties have had an opportunity to cross-examine the witness, but here the sureties never had such opportunity, and the fact that the administrator had such opportunity should not bind them. We can understand how one administrator might be a privy in estate with another administrator of the same estate, as one succeeds the other as to the same subject matter (*Boudereau* v. *Montgomery*, 4 *Wash. C. C.*, 186), but we cannot see that the same relation exists between an administrator and his sureties. "In an action on an administration bond against the sureties a decree in the Court of Equity against the principal is only *prima facie* evidence, and the surety may impugn the decree." *Norton, Ordinary*, v. *Wallace* (in Court of Errors), 1 *Rich.*, 507 ; *Crane, Boylston & Co.* v. *Moses*, 13 *S. C.*, 580. In the case of Norton, Judge Butler said: "The question here suggests itself, upon what principle is it, that the surety has a right to look into the decree at all? Why, upon no other than this, that he was not privy to the former judgment, and as a stranger claims the right to be heard for the purpose of ascertaining his just and legal rights." It is true that afterwards Judge O'Neall said, in the same case (2 *Rich.*, 461), that the remark as to not being privy to the judgment, "must be understood in a qualified sense." But accepting the qualification, we think the fact that the surety may "surcharge and falsify the account," excludes the idea of such identity of interest as to make evidence against one necessarily evidence against the other.

It is said that no importance should be given to the admission of the evidence even if it was error, as the judgment was not rested on it. Of course, we cannot know what influence it had upon the court, but there is one view in which the testimony was important.

The judgment of this court is, that the judgment of the Circuit Court be set aside without prejudice and the cause remanded for a new trial according to the conclusions herein announced.